2014 ND 209

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Dale YOST, Defendant and Appellant.**

Nos. 20140067, 20140070, 20140071.

Supreme Court of North Dakota.

Nov. 12, 2014.

Cassey A. Breyer, Assistant State's Attorney, Towner, ND, for plaintiff and appellee.

Lee M. Grossman, Valley City, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1]    Dale Yost appeals from a criminal judgment entered on an *Alford* plea to five counts of gross sexual imposition. We conclude the record does not establish Yost knowingly and intelligently waived his right to counsel, and his conduct did not rise to the functional equivalent of a voluntary waiver of his right to counsel. We reverse and remand for resentencing with appointed counsel.

I

[¶ 2]    In October 2012, Yost was charged with eleven counts of gross sexual imposition involving five minor victims. Yost applied for court-appointed counsel, and William Hartl was appointed to represent him.

[¶ 3]    In early August 2013, Yost requested the Commission on Legal Counsel for Indigents appoint him a new attorney, but the Commission denied his request. On August 28, 2013, while represented by Hartl, Yost entered *Alford* pleas to five counts of gross sexual imposition with six counts dismissed as part of a plea agreement. The judge confirmed with Yost on the record that Yost had discussed the agreement with his attorney, he was satisfied with the discussions, and he understood the consequences of entering the pleas. A presentence investigation report was ordered with sentencing to be scheduled at a later date.

[¶ 4]    Before sentencing, on November 7, 2013, Yost filed a letter with the district court inquiring how to file a claim for ineffective assistance of counsel. The court responded to Yost stating such a claim was an "appellate issue," and the court has "no jurisdiction over the matter." On November 13, 2013, another letter from Yost was filed with the court which stated "[t]his is my complaint" for filing an ineffective assistance of counsel claim. The

court again responded to Yost stating it was "not an appropriate motion" before the court because such a claim was an "appellate issue," and it would "not be considered."

[¶ 5] On November 14, 2013, Hartl moved to withdraw as Yost's attorney based on Yost's letters to the court regarding Yost's ineffective assistance of counsel claim. The State responded and requested that the court permit the withdrawal, find that Yost effectively waived his right to counsel, and advise Yost of the implications of waiving his right to counsel. At the motion to withdraw hearing, the following discussion took place:

THE COURT: All right. So, the Court will order that Mr. Hartl is withdrawn from this case. Therefore, Mr. Yost, do you plan to represent yourself in the continued matter here?

THE DEFENDANT: No. I've been— like all the letters I have written, I'd like to have an attorney that I can trust and is honest with me.

THE COURT: All right. You understand, as far as a court-appointed attorney, that you cannot pick and choose who that attorney will be?

THE DEFENDANT: Yes, I know that. And like I said in the letters and stuff, that Hartl has told me that I was guilty from the day we met. And I—and I feel that he—he just ain't doing his job properly to defend me in this case.

THE COURT: All right. But also, you understand that earlier, the end of this summer or first part of the fall, that you had applied for a different court-appointed attorney, and that was denied by the indigent defense council; do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: All right. I mean, I guess I can have you reapply to the indigent defense council. I'm surmising

they're going to deny it again. Do you understand that?

THE DEFENDANT: Yeah. Like I said, all I'm asking for is an attorney that will, I feel, does his job. I've been asking for this from the first letter I've written, and you know, Hartl has not, in my eyes, done his job. There's evidence that I've seen on the case that should have been brought up, he's never even brought to attention. So, all I'm asking for is just an honest, truth attorney that will help me. That's it.

THE COURT: All right. Well, like I say, I guess I'll allow you to reapply. So, we'll have you fill out the court-appointed attorney application and financial affidavit, and have that submitted to the indigent commission. And we'll wait for their response. As of today, then, I'm going to continue your sentencing hearing. . . .

[¶ 6] The district court also advised Yost that, if the Commission denied Yost's request for new appointed counsel and Yost wanted to proceed on his own, Yost would need to follow the Rules of Evidence and the Rules of Criminal Procedure, and he would not be granted leniency. The State also renewed its request for the court to make a finding on the record that, if Yost's application was denied again, it would be deemed a functional equivalent of a voluntary waiver of his right to counsel.

[¶ 7] After the court granted Hartl's motion to withdraw, Yost again applied to the Commission for a new court-appointed attorney. The Commission forwarded his application to the court for "consideration and direction as to whether the Commission is to assign new counsel." The court denied the request stating it deemed Yost's continued requests for a new attorney to be the functional equivalent of a voluntary waiver of his right to counsel,

and sentencing was rescheduled to provide Yost additional time to find an attorney. At the rescheduled sentencing hearing on January 15, 2014, Yost appeared without an attorney, and the court proceeded with sentencing. Yost received a concurrent sentence of 45 years, with 20 years suspended, followed by ten years of supervised probation.

## II

[¶ 8] On appeal, Yost argues he did not knowingly and intelligently waive his right to counsel, and the district court erred by allowing sentencing to proceed when he was not represented.

[¶ 9] "The standard of review on an alleged denial of a constitutional right to counsel is de novo." *State v. Murchison,* 2004 ND 193, ¶ 9, 687 N.W.2d 725. This Court reviews a district court's denial of a request for appointed counsel under an abuse of discretion standard, inquiring whether the court "acted arbitrarily, unconscionably, or unreasonably." *City of Grand Forks v. Corman,* 2009 ND 125, ¶ 8, 767 N.W.2d 847. Substitution of appointed counsel is committed to the sound discretion of the trial court and, absent a showing of good cause, a refusal to substitute is not an abuse of discretion. *State v. Harmon,* 1997 ND 233, ¶ 12, 575 N.W.2d 635.

[¶ 10] The Sixth Amendment of the United States Constitution and Article 1, Section 12 of the North Dakota Constitution, guarantees a criminal defendant's right to counsel. *City of Fargo v. Rockwell,* 1999 ND 125, ¶ 7, 597 N.W.2d 406. During all critical stages of the prosecution, defendants have a fundamental right to counsel. *Murchison,* 2004 ND 193, ¶ 8, 687 N.W.2d 725. Sentencing is a critical stage at which a defendant is entitled to effective assistance of counsel. *State v. Phelps,* 297 N.W.2d 769, 776 (N.D.1980).

However, the right to court-appointed counsel is a limited, not an absolute, right. *State v. Schneeweiss,* 2001 ND 120, ¶ 7, 630 N.W.2d 482. "The trial court has no duty to appoint a specific counsel, or to continually seek new counsel for a capricious and difficult defendant." *Harmon,* 1997 ND 233, ¶ 12, 575 N.W.2d 635 (citation omitted). In addition, an indigent defendant is not entitled to appointed counsel of his or her choice. *State v. Foster,* 1997 ND 8, ¶ 14, 560 N.W.2d 194.

## III

[¶ 11] Yost claims he did not knowingly and intelligently waive his right to counsel because the district court failed to warn him of the dangers and disadvantages of self-representation.

[¶ 12] Waiver of the right to counsel must be made knowingly, voluntarily, and intelligently. *Murchison,* 2004 ND 193, ¶ 9, 687 N.W.2d 725. "A knowing and intelligent waiver of the right to counsel depends on the facts and circumstances and requires the defendant to be made aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows what he is doing and his choice is made with eyes open." *State v. Poitra,* 1998 ND 88, ¶ 8, 578 N.W.2d 121. It is not limited to what the trial court said or understood; rather, the inquiry focuses on what the defendant understood. *State v. Jensen,* 2010 ND 3, ¶ 17, 777 N.W.2d 847.

[¶ 13] The State admits Yost did not make an unambiguous statement on the record that he wanted to proceed self-represented. However, such a statement is not necessary to prove waiver is voluntary. *See State v. Holbach,* 2007 ND 114, ¶ 10, 735 N.W.2d 862. The district court need not enter into a specific colloquy about the dangers of proceeding self-rep-

resented, nor must the record show an unequivocal statement indicating the defendant's desire to represent himself. *See id.* at ¶ 8; *City of Fargo v. Habiger*, 2004 ND 127, ¶ 19, 682 N.W.2d 300. However, this Court has stated its preference for trial courts to make an on-the-record determination that the defendant voluntarily, knowingly, and intelligently waived the right to counsel to eliminate any ambiguity. *State v. Dvorak*, 2000 ND 6, ¶ 11, 604 N.W.2d 445.

[¶ 14] The State contends that Yost's conduct, namely his request to the Commission for new court-appointed counsel after having a previous request denied and his numerous letters to the court requesting new counsel, should be considered the functional equivalent of a voluntary waiver of his right to counsel.

[¶ 15] "[A] defendant need not make unequivocal statements indicating a voluntary desire to proceed pro se; rather, the defendant's conduct may be the functional equivalent of a voluntary waiver of the right to counsel." *Schneeweiss*, 2001 ND 120, ¶ 27, 630 N.W.2d 482. This Court has previously held that a defendant's conduct, such as continued requests for new court-appointed counsel after the trial court clearly denied an initial request or a manipulative pattern of obstructing the legal process, was the functional equivalent of a voluntary waiver of the right to counsel. *Id.* at ¶¶ 27, 29 (repeated requests for new counsel after prior request was denied and manipulating income when applying for indigent services); *see also Rockwell*, 1999 ND 125, ¶ 14, 597 N.W.2d 406 (continued requests for new counsel after trial court denied initial request); *Harmon*, 1997 ND 233, ¶¶ 17, 21, 575 N.W.2d 635 (failing to cooperate with court-appointed counsel and continued requests for substitute counsel); *Dvorak*, 2000 ND 6, ¶¶ 14–

15, 604 N.W.2d 445 (repeated requests for continuances and new counsel).

[¶ 16] The State compares Yost's case to *Harmon*, 1997 ND 233, 575 N.W.2d 635. In *Harmon*, this Court held the defendant's refusal of the appointed counsel's services and his continued requests for substitute counsel after having his previous requests denied was the functional equivalent of a voluntary waiver of his right to counsel. *Id.* at ¶¶ 17, 21. In determining whether the defendant's waiver was knowing and intelligent, this Court made specific note of the fact that the defendant had several previous contacts with the criminal justice system, copies of court rules and the criminal code were made available to him and he was informed the rules would apply equally to him, he was very involved in his case, he was literate and directed correspondence to the court, and he rejected the court-appointed counsel as standby counsel. *Id.* at ¶¶ 22–23.

[¶ 17] This case is distinguishable from *Harmon*. The defendant in *Harmon* refused to accept his appointed counsel's services. *Harmon*, 1997 ND 233, ¶ 4, 575 N.W.2d 635. In this case, Yost did not refuse Hartl's services or refuse to work with him. After the Commission denied Yost's first request for a new court-appointed attorney other than Hartl, the court allowed Yost to apply a second time after granting Hartl's withdrawal motion. The Commission forwarded Yost's second application to the court for "consideration and direction" as to whether new counsel should be assigned, and the court denied his request. In essence, the court gave Yost permission to submit a second request for new court-appointed counsel and then subsequently treated that action as the functional equivalent of a voluntary waiver of his right to counsel. We conclude the court erred in treating Yost's

conduct, namely his second request for appointed counsel, as the functional equivalent of a voluntary waiver of his right to counsel when it had expressly given Yost permission to reapply.

[¶ 18]  If the district court, in the exercise of its discretion, was going to deny Yost's request and treat it as the functional equivalent of a voluntary waiver of his right to counsel if the Commission left the decision up to the court, the court should have warned Yost that it would deny the request.  Yost should have been warned at that time, prior to applying to the Commission a second time for new counsel, of the potential danger of not receiving additional counsel.

[¶ 19]  In contrast to *Harmon*, in *State v. Wicks*, this Court held the defendant was denied her right to counsel when the district court excused her appointed counsel on the day of trial because of a conflict of interest which the defendant had created by filing a disciplinary complaint against the attorney.  1998 ND 76, ¶¶ 18–22, 576 N.W.2d 518.  In *Wicks*, the defendant claimed she filed the complaint in order to create a record of ineffective assistance of counsel on appeal, and she did not realize filing the complaint would result in the attorney's withdrawal.  *Id.* at ¶ 19.  This Court determined *Wicks* was unlike *Harmon* because Wicks "intended to go to trial" with her attorney and did not understand the consequences of filing a disciplinary complaint against her attorney.  *Wicks*, at ¶ 22.

[¶ 20]  Yost's case is similar to *Wicks* in that Yost claims he did not intend "to get rid of" Hartl, and he did not realize submitting his letters to the court would result in Hartl's withdrawal.  While he did not object to Hartl's motion to withdraw, Yost claims he never wanted to continue by representing himself.

[¶ 21]  Yost was not warned of the danger that his continued requests for new court-appointed counsel could be deemed the functional equivalent of a voluntary waiver of his right to counsel.  He was not given the choice of having Hartl as his court-appointed counsel or representing himself.  In *Wicks*, this Court warned against the dilemma that occurs when a publicly defended defendant levels a disciplinary complaint against their attorney.  1998 ND 76, ¶ 25, 576 N.W.2d 518.  This Court acknowledged there are several reasons why disciplinary complaints are leveled against attorneys, and although some may have a valid basis, many are groundless.  *Id.* This Court warned:

> If the filing of a disciplinary complaint could stop the prosecution of a criminal defendant the administration of justice would come to a halt.  A disciplinary complaint against an appointed attorney cannot be used as an artifice to create the irreconcilable conflict of interest envisioned in paragraphs (a) and (b).  N.D. R. Prof. Conduct 1.7(a) & (b).  *Cf. Farm Credit Bank of St. Paul v. Brakke*, 512 N.W.2d 718, 720 (N.D.1994) (holding fact that trial judge was being sued by party in pending action did not require recusal because it would allow litigants to eliminate unsatisfactory judges by merely suing them).

*Id.*

[¶ 22]  In this case, the district court did not ask Yost whether he would be willing to proceed with Hartl or continue without counsel.  Instead, the court permitted Yost to reapply to the Commission for a new court-appointed attorney, and then after the Commission left it to the court's discretion, the court determined Yost's conduct, which it had previously condoned, was the functional equivalent of a voluntary waiver of his right to counsel.

[¶ 23]  Under the specific facts and circumstances of this case, we conclude the

record does not establish Yost knowingly and intelligently waived his right to counsel, nor did his conduct rise to the functional equivalent of a voluntary waiver of his right to counsel.

[¶ 24] We reverse and remand for re-sentencing with appointed counsel.

[¶ 25] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SAND-STROM, JJ., concur.