FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 17, 2020
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2020 ND 261

State of North Dakota,
Plaintiff and Appellee

v.

Rolando Rodriguez,
Defendant and Appellant

No. 20200004

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable John A. Thelen, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Rachel R. Egstad, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee; submitted on brief.

Laura C. Ringsak, Bismarck, ND, for defendant and appellant; submitted on brief.

**McEvers, Justice.**

[¶1]   Rolando Rodriguez appeals from a criminal judgment after a jury found him guilty of gross sexual imposition, burglary, terrorizing, and domestic violence assault.   On appeal, Rodriguez argues he did not knowingly, intelligently, and voluntarily waive his right to counsel, that insufficient evidence existed to support his guilty verdicts, and that the district court erred when it failed to use a special verdict for the jury to determine whether Rodriguez used a dangerous weapon in commission of the terrorizing offense. We conclude Rodriguez knowingly, intelligently, and voluntarily waived his right to counsel and he failed to preserve his arguments on sufficiency of the evidence and the necessity of a special verdict form.   We affirm the judgment.

I

[¶2] Rodriguez was charged with gross sexual imposition, burglary, terrorizing, intentional interference with a telephone during an emergency call, and assault-domestic violence arising out of an incident occurring on May 21, 2018.   Rodriguez had five different attorneys appointed to represent him prior to trial and each attorney filed a motion to withdraw as counsel.   On June 19, 2019, the district court held a hearing on the last appointed attorney's motion to withdraw, and ultimately allowed Rodriguez to represent himself.

[¶3]   On August 27, 2019, a jury trial commenced on all counts. At trial, a Grand Forks police officer testified that according to D.D., she and Rodriguez have a child together but were not dating at the time of the incident.   The officer testified that Rodriguez had recently returned to Grand Forks and had briefly stayed with D.D. before she kicked him out after finding him rummaging through her things.

[¶4]   A few days later, on May 21, 2018, Rodriguez knocked on D.D.'s door, but she did not let him in.   Subsequently, Rodriguez stood outside her apartment whistling and hollering to D.D. but she still did not invite him in.   Rodriguez tried to use a key to get into D.D.'s apartment, but the locks had been changed.

Rodriguez kicked open D.D.'s locked apartment door and entered. The officer testified that according to D.D.'s accounts, Rodriguez went straight into D.D.'s bedroom, pulled her phone out of her hand, and struck her on the side of her face. During the attack, Rodriguez ripped off D.D's pants and shoved his fingers into her vagina. Rodriguez also repeatedly struck and threatened to kill D.D. Next, Rodriguez told D.D. he was going to get a knife and that he was going to kill her. Rodriguez came back from the kitchen holding a knife. D.D. escaped from Rodriguez, and ran into the apartment complex's hallway.

[¶5] A neighbor testified that she called the police after she observed Rodriguez chasing D.D. down the hall. Video evidence from the apartment complex surveillance cameras was introduced by the State, showing Rodriguez kicking in D.D.'s door, entering the unit, and later chasing her out of the unit into the hall. The knife Rodriguez allegedly used was received in evidence. The State submitted photos into evidence of D.D.'s black eye and bruises taken on the day of the attack. The day after the incident D.D. gave a taped statement to police about the attack, which was received in evidence and published to the jury.

[¶6] D.D. testified at trial that she had little memory of the events of May 21, 2018, and, inconsistent with her prior statements made to police, that Rodriguez had permission to be in the apartment, did not have a weapon, and that she removed her pants voluntarily.

[¶7] On August 29, 2019, Rodriguez was found guilty by a jury and convicted on all offenses charged except interference with a telephone during an emergency call. Following a sentencing hearing, a criminal judgment on all counts was entered on January 3, 2020. Rodriguez appeals.

II

[¶8] Rodriguez argues he did not knowingly, intelligently, and voluntarily waive his right to counsel. "A criminal defendant's right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 12 of the North Dakota Constitution." *City of Fargo v. Rockwell*, 1999 ND 125, ¶ 7, 597 N.W.2d 406. The standard of review on an

alleged denial of the constitutional right to counsel is de novo. *Id.* The right to appointed counsel is a limited, rather than an absolute, right. *State v. Yost*, 2014 ND 209, ¶ 10, 855 N.W.2d 829. The district court does not have a duty to "continually seek new counsel for a capricious and difficult defendant." *Id.* (citing *State v. Harmon*, 1997 ND 233, ¶ 12, 575 N.W.2d 635).

[¶9] To determine whether a defendant's right to counsel has been violated, this Court has developed a two-step inquiry: (1) whether the defendant's waiver was voluntary; and (2) whether the defendant's waiver was knowing and intelligent. *State v. Dvorak*, 2000 ND 6, ¶ 12, 604 N.W.2d 445.

[¶10] A defendant may indicate a voluntary desire for self-representation with an unequivocal statement or with conduct that is the functional equivalent of such a statement. *See State v. Harmon*, 1997 ND 233, ¶¶ 15-21, 575 N.W2d 635. "A knowing and intelligent waiver of the right to counsel depends on the facts and circumstances and requires the defendant to be made aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows what he is doing and his choice is made with eyes open." *State v. Poitra*, 1998 ND 88, ¶ 8, 578 N.W.2d 121.

[¶11] Before Rodriguez requested to represent himself at trial, he had five different attorneys appointed to represent him. Rodriguez expressly stated to the district court that he wished to represent himself. The court warned Rodriguez that he would not be assigned a sixth court-appointed defense attorney if the court discharged Rodriguez's current counsel. Rodriguez insisted on representing himself:

> THE COURT: All right. So the basis of the motion to withdraw appears to simply be the fact that Mr. Rodriguez is saying I want to represent myself, I don't want you to represent me any longer. So, Mr. Rodriguez, my plan would be that if I discharge Mr. Baumann from representing you, I'm not going to appoint anybody else to represent you.
> THE DEFENDANT: Trust me, I don't want nobody else. I've had enough of these public pretenders.
> . . .
> THE COURT: What is your educational background?

3

THE DEFENDANT: Well, we've been through this already. Pretty sure.

THE COURT: Yeah, I tried but you walked out on me.

THE DEFENDANT: Yeah. Nowhere near an attorney but I know how to file subpoenas and motions.

THE COURT: So do you want to talk, I would like to know a little bit more of your educational background to see if you're capable to represent yourself. Are you a high school graduate?

THE DEFENDANT: The fact is that you can't stop me from going pro se, it's my decision already. That if I decide to go pro se and represent myself, I am.

THE COURT: Okay.

THE DEFENDANT: That much I know.

THE COURT: So you're saying it doesn't make any difference what questions I ask you—

THE DEFENDANT: Yep. I'm going to represent myself regardless. What, are you going to give me another attorney to move my court date another six months, eight months down the line?

[¶12] During the district court's colloquy with Rodriguez, the court ensured that Rodriguez was making the waiver with open eyes and fully understanding the disadvantages of proceeding pro se:

THE COURT: Do you understand that the same rules that apply to attorneys are going to apply to you if you represent yourself?

THE DEFENDANT: Yeah.

THE COURT: You'll be held to the same standard.

THE DEFENDANT: Sure.

THE COURT: And that would apply to your questioning of the jury.

THE DEFENDANT: Yep.

THE COURT: Witness examination.

THE DEFENDANT: Yep.

THE COURT: Defenses to be raised, objections. Do you understand all of that?

THE DEFENDANT: I guess as we go I'll pick up here and there. I'm a fast learner.

. . .

THE COURT: Do you see any disadvantages to proceeding pro se?

4

THE DEFENDANT: Oh, of course.  You got two state's attorneys against a guy that's not even educated.  Come on.
THE COURT: Okay.  So to me that answer says I need an attorney, I want an attorney.
THE DEFENDANT: Not really.  Not really.  Like I said I've gone through five of them and none of them have done nothing for me. What's the sixth going to do?  It makes no difference.

Rodriguez insisted on representing himself and acknowledged that he understood the disadvantages of proceeding without an attorney.  On this record, we conclude Rodriguez voluntarily, knowingly, and intelligently waived his right to counsel.

## III

[¶13] Rodriguez also argues on appeal that his guilty verdicts were not supported by sufficient evidence.  This Court will reverse a conviction on the ground of insufficient evidence if, after viewing the evidence and all reasonable inferences in the light favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt.  *State v. Steen*, 2000 ND 152, ¶ 17, 615 N.W.2d 555.  Under N.D.R.Crim.P. 29, a defendant in a criminal jury trial must move for a judgment of acquittal to preserve the issue of the sufficiency of the evidence for appeal.  *City of Fargo v. Lunday*, 2009 ND 9, ¶ 5, 760 N.W.2d 136.  In the absence of a motion for acquittal, this Court may only consider sufficiency of the evidence issues if the district court committed obvious error.  *State v. Yineman*, 2002 ND 145, ¶ 21, 651 N.W.2d 648. "We exercise our power to notice obvious error cautiously, and only in exceptional circumstances." *Lunday*, at ¶ 5.  When a party fails to argue obvious error, this Court has discretion whether to consider the issue.  *State v. Smith*, 2019 ND 239, ¶ 15, 934 N.W.2d 1.  We decline to address Rodriguez's argument on sufficiency of the evidence.

## IV

[¶14] Rodriguez argues the district court erred when it failed to use a special verdict form finding Rodriguez had used a dangerous weapon during the terrorizing offense. Rodriguez notes that the State charged him for terrorizing

5

under several statutes, including N.D.C.C. § 12.1-17-04 (defining terrorizing) and N.D.C.C. § 12.1-32-02.1 (prescribing a mandatory minimum sentence for armed offenders). Rodriguez cites to precedent from *State v. Sheldon*, which states N.D.C.C. § 12.1-32-02.1 applies only if the possession of a dangerous weapon is an essential element of the crime committed or if the jury makes a special finding that a dangerous weapon, explosive, or firearm was used. 312 N.W.2d 367, 370 (N.D. 1981).

[¶15] Rodriguez was given time to review the jury instructions by the district court and failed to object to the absence of a special verdict form. Because Rodriguez failed to object to the jury instructions and did not request a special verdict, the issue was not preserved for appeal and may only be considered under the obvious error standard of review. *State v. Estrada*, 2013 ND 79, ¶ 22, 830 N.W.2d 617. "The defendant has the burden to show an obvious error that affects his substantial rights, and we are not required to exercise our discretion to notice obvious error when the defendant has not raised an issue about obvious error on appeal." *State v. Smith*, 2019 ND 239, ¶ 15, 934 N.W.2d 1. On appeal, Rodriguez did not argue that the absence of a special verdict or special finding that he used a dangerous weapon constituted obvious error. This Court declines to exercise its discretion to consider obvious error when Rodriguez failed to raise the issue on appeal.

V

[¶16] We affirm the judgment.

[¶17] Jon J. Jensen, C.J.
    Gerald W. VandeWalle
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte