# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 98

State of North Dakota,                    Plaintiff and Appellee

v.

Daedyn Ashton Lewellyn,                 Defendant and Appellant

## No. 20240295

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Julie A. Lawyer, State's Attorney, Bismarck, ND, for plaintiff and appellee.

Samuel A. Gereszek, Grand Forks, ND, for defendant and appellant.

# State v. Lewellyn
## No. 20240295

**McEvers, Justice.**

[¶1]   Daedyn Lewellyn appeals from a criminal judgment entered after a jury found him guilty of terrorizing. Lewellyn argues the district court violated his Sixth Amendment right to counsel and abused its discretion in denying his request to continue trial. We affirm.

I

[¶2]   In May 2023, the State charged Lewellyn with terrorizing. Trial was scheduled for September 6, 2023. Kent Morrow was assigned as court-appointed counsel. In June 2023, Morrow moved for leave to withdraw as counsel because he was retiring, and the district court granted the motion. Steven Balaban was assigned in July 2023. On September 1, 2023, the court held a final dispositional conference where Lewellyn requested a continuance to review discovery he received in another case that he believed was relevant to this case. The court granted the continuance, resetting the trial for January 23, 2024.

[¶3]   In November 2023, Lewellyn requested the district court cancel the trial because he was planning to change his plea. At the change of plea hearing, Lewellyn stated he was not satisfied with Balaban's representation. The court told him that he could request a new court-appointed attorney, which the court would grant "once." After Lewellyn indicated he wanted a new attorney, the court stated it would allow Balaban to withdraw, and canceled the change of plea hearing. Balaban then filed a motion to withdraw and an unsworn statement, stating the reasons for the withdrawal were Lewellyn's dissatisfaction with his representation and a deterioration of the attorney-client relationship. The court granted the withdrawal.

[¶4]   Grant Walker was assigned on November 15, 2023, and withdrew the next day due to a conflict of interest. Kyle Weinberger was then assigned, and also withdrew due to a conflict of interest. On November 20, 2023, Matthew Arthurs was assigned to the case. On December 14, 2023, Arthurs moved to withdraw because "an ethical conflict arose," but he was "not free to disclose the exact

1

circumstances pursuant to the North Dakota Rules of Professional Conduct." The district court granted the motion, and Thomas Glass was assigned on December 22, 2023.

[¶5] After Lewellyn requested the trial be continued due to new counsel being appointed, the trial was rescheduled for April 9, 2024. The State then requested a continuance due to a scheduling conflict with another case (a two-week murder trial), and trial was reset for June 11, 2024. At the final dispositional conference on June 7, 2024, the parties jointly requested that the trial be continued because Lewellyn's other case was scheduled for trial on June 10, 2024, which was to last three or four days, conflicting with trial in this case. Trial was reset to August 22, 2024.

[¶6] On August 16, 2024, the district court held another final dispositional conference where Lewellyn through counsel indicated the case would proceed to trial. On August 21, 2024, the day before trial, Lewellyn requested the trial be continued because he dismissed Glass as his attorney. That same day, the court denied the continuance request, Glass moved to withdraw, and the court held a status conference. In support of the withdrawal, Glass submitted an affidavit stating the attorney-client relationship deteriorated and Lewellyn believed his representation was ineffective due to jury convictions in Lewellyn's other case where he represented Lewellyn. At the status conference, Lewellyn stated that he fired Glass and requested new counsel "if possible." The court denied the request for new court-appointed counsel, stating the case was 467 days old and multiple attorneys had already been appointed. After the court told Lewellyn he has the right to counsel and reminded him that Glass has been representing him, Lewellyn agreed that he made it "abundantly clear" that he did not want Glass representing him. The court then allowed Glass to withdraw. Glass confirmed Lewellyn had access to discovery.

[¶7] On August 22, 2024, a jury trial was held with Lewellyn representing himself. Lewellyn renewed his objection to "self-representation." The district court overruled the objection and denied the request for new court-appointed counsel because of the age of the case, multiple appointments of counsel, and "multiple continuances that have been due to the changing of counsel." The jury

found Lewellyn guilty of terrorizing, and the court sentenced him and entered judgment.

## II

[¶8]   Lewellyn argues the district court violated his Sixth Amendment right to counsel. "A criminal defendant's right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 12 of the North Dakota Constitution." *State v. Rodriguez*, 2020 ND 261, ¶ 8, 952 N.W.2d 233. "The right to appointed counsel is a limited, rather than an absolute, right." *Id.* "The district court does not have a duty to 'continually seek new counsel for a capricious and difficult defendant.'" *Id.* (quoting *State v. Yost*, 2014 ND 209, ¶ 10, 855 N.W.2d 829). Our standard of review on an alleged denial of the constitutional right to counsel is de novo. *Id.*

[¶9]   "To determine whether a defendant's right to counsel has been violated, this Court has developed a two-step inquiry: (1) whether the defendant's waiver was voluntary; and (2) whether the defendant's waiver was knowing and intelligent." *Rodriguez*, 2020 ND 261, ¶ 9. "A defendant may indicate a voluntary desire for self-representation with an unequivocal statement or with conduct that is the functional equivalent of such a statement." *Id.* ¶ 10. "A knowing and intelligent waiver of the right to counsel depends on the facts and circumstances and requires the defendant to be made aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows what he is doing and his choice is made with eyes open." *Id.*

[¶10] Conduct functionally equivalent to a voluntary waiver of the right to counsel includes "continued requests for new court-appointed counsel after the trial court clearly denied an initial request or a manipulative pattern of obstructing the legal process." *Yost*, 2014 ND 209, ¶ 15; *see, e.g., State v. Dvorak*, 2000 ND 6, ¶ 15, 604 N.W.2d 445; *City of Fargo v. Rockwell*, 1999 ND 125, ¶ 14, 597 N.W.2d 406; *State v. Harmon*, 1997 ND 233, ¶ 21, 575 N.W.2d 635; *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir. 1988) ("[A]ppellant's decision to continue to seek the removal of his appointed counsel, after being cautioned that no replacement counsel would be appointed, was the functional equivalent of a 'voluntary'

waiver of his right to counsel in the sense that it was not a waiver forced upon him.").

[¶11] In total, Lewellyn had six court-appointed attorneys. Three of them withdrew because of retirement or a conflict of interest (unrelated to Lewellyn's conduct). Attorney Arthurs withdrew due to an undisclosed ethical conflict. Attorneys Balaban and Glass withdrew because of Lewellyn's dissatisfaction with the representation and a deterioration of the attorney-client relationship. When Lewellyn expressed his dissatisfaction with his second attorney (Balaban), the district court expressly told Lewellyn that he could request a new court-appointed attorney, which the court would grant "once." Lewellyn was therefore informed that substitute court-appointed counsel would be allowed only once.

[¶12] At the final dispositional conference, six days before trial, Lewellyn through counsel indicated the case was ready to proceed to trial. At the status conference, the day before trial, Lewellyn told the district court that he fired Attorney Glass and was requesting new court-appointed counsel. Prior to granting Glass's motion to withdraw, the court explained to Lewellyn that another attorney would not be appointed for him. The court then told Lewellyn that he has the right to counsel and reminded him that "Glass has been representing you." Lewellyn confirmed that he made it "abundantly clear" that he did not want Glass representing him. The court then granted Glass's motion to withdraw.

[¶13] After denying him new court-appointed counsel, Lewellyn persisted in his request for substitute counsel throughout the status conference, but stated, "We can proceed with the trial under my representation, but it's under my objection." At trial, Lewellyn once again requested new court-appointed counsel. The district court explained its denial of substitution of counsel was because of the age of the case, multiple appointments of counsel, and "multiple continuances that have been due to the changing of counsel." At least two of these continuances were at the request of Lewellyn.

[¶14] Lewellyn was warned before Balaban withdrew that the next attorney appointed would be his last. He was further warned before Glass was allowed

4

to withdraw that another attorney would not be appointed. Despite these warnings, Lewellyn made it clear that he did not want Glass representing him and that he would represent himself if no substitute counsel was appointed to represent him. We therefore conclude Lewellyn provided the functional equivalent of a voluntary waiver of the right to counsel.

[¶15] Lewellyn also gave a knowing and intelligent waiver of the right to counsel. At the status conference, prior to allowing Glass to withdraw, the district court explained to Lewellyn that if he represented himself he would do so at his "own risk because of the fact that [he is] held to the same standard as a lawyer," and he would be expected to "follow the same rules that any attorney representing [him] would follow." Glass then informed the court that he advised Lewellyn that morning of "his options" and told him that the court "may not grant you an opportunity to get another counsel or the continuance . . . . And [Lewellyn] indicated at that time, if that was the case, he's moving forward representing himself." Further, Lewellyn had already experienced a jury trial with Glass approximately two months before the jury trial in this case. Lewellyn therefore had very recent exposure to the jury trial process. At the close of the status conference, Lewellyn told the court, "This case is simple enough. I think I should be able to give testimony and make the objections I need to make." Lewellyn was aware of the dangers and disadvantages of self-representation and his choice was made with eyes open. *See Dvorak*, 2000 ND 6, ¶ 16 ("Under our cases, the test is not limited to what the trial court said or understood, the inquiry focuses on what the defendant understood."). In addition to being voluntary, Lewellyn's waiver of the right to counsel was knowing and intelligent. We conclude the court did not violate Lewellyn's constitutional right to counsel.

III

[¶16] Lewellyn argues the district court abused its discretion in denying his request to continue trial. "Motions for continuance must be promptly filed as soon as the grounds are known and will be granted only for good cause shown . . . ." N.D.R.Ct. 6.1(b). We will not reverse a district court's decision to deny a continuance absent an abuse of discretion. *State v. Hilgers*, 2004 ND 160, ¶ 38, 685 N.W.2d 109. "A district court abuses its discretion if it acts in an

5

unreasonable, arbitrary, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law." *State v. Glaum*, 2024 ND 47, ¶ 37, 4 N.W.3d 540.

[¶17] Lewellyn contends that since trial was less than a day away from when he fired his attorney and made the request to continue, he did not have enough time to prepare for trial. Lewellyn did not make the same argument to the district court. In his continuance request document, Lewellyn through counsel stated he was requesting a continuance because he "dismissed [Glass] as his counsel." The court denied Lewellyn's request prior to the status conference. At no point during the status conference did Lewellyn request a continuance (or renew his request) for the purpose of his own preparation. After Glass was granted leave to withdraw, the court asked Lewellyn if he was "planning . . . on moving forward on [his] own behalf;" and he responded, "Correct." Moreover, he stated the case was "simple enough" and that he would be able to "give testimony and make the objections."

[¶18] The district court denied the request for a continuance because the case was 467 days old and "there ha[d] been more than enough time to get things accomplished, even taking into consideration the number of changes of counsel." Further, Attorney Glass stated the reason for Lewellyn's dissatisfaction with his representation was the convictions in his other case. That trial, however, was approximately two months before this continuance request was filed. A motion for substitute counsel and continuance therefore could have been more promptly filed, rather than on the eve of trial. Given the age of the case, that multiple continuances were previously granted including at least two requests by Lewellyn, that the continuance request was filed on the eve of trial due to Lewellyn's 11th hour firing of Glass, and that Lewellyn effectively informed the court that he was prepared for trial, we conclude the court did not abuse its discretion in denying the request to continue trial.

IV

[¶19] The criminal judgment is affirmed.

[¶20] Jon J. Jensen, C.J.

Daniel J. Crothers

Lisa Fair McEvers

Jerod E. Tufte

Douglas A. Bahr